IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PEREGRINE SYSTEMS, INC., et al., | ) | Bankruptcy Case Nos. 02- |
| | ) | 12740-12741 (JKF) |
| Debtors. | ) | |
| | ) | |
| AW TREUHAND GMBH | ) | |
| WIRTSCHAFTSPRUFUNGSGESELLSCHAFT | ) | |
| STEUERBERATUNGSGESELLSCHAFT, | ) | |
| formerly known as | ) | |
| Arthur Andersen | ) | |
| Wirtschaftsprufungsgesellschaft | ) | |
| Steuerberatungsgesellschaft, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-1325-SLR |
| | ) | |
| PEREGRINE SYSTEMS, INC., et al., | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 29th day of September, 2005, having

reviewed the papers submitted by the parties to this appeal;

IT IS ORDERED that the opinion and order issued on September

8, 2004 is affirmed in part and reversed in part, and the matter

is remanded to the bankruptcy court for further proceedings

consistent with this order.

1.   **Standard of Review.**  This court has jurisdiction to

hear an appeal from the bankruptcy court pursuant to 28 U.S.C. §

158(a).  In undertaking a review of the issues on appeal, the

court applies a clearly erroneous standard to the bankruptcy
court's findings of fact and a plenary standard to that court's
legal conclusions.  See Am. Flint Glass Workers Union v. Anchor
Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  With mixed
questions of law and fact, the court must accept the bankruptcy
court's "finding of historical or narrative facts unless clearly
erroneous, but exercise[s] 'plenary review of the [bankruptcy]
court's choice and interpretation of legal precepts and its
application of those precepts to the historical facts.'"  Mellon
Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d
Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co.,
669 F.2d 98, 101-02 (3d Cir. 1981)).  The district court's
appellate responsibilities are further informed by the directive
of the United States Court of Appeals for the Third Circuit,
which effectively reviews on a de novo basis bankruptcy court
opinions.  In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In
re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

     2.  **Background.**  On September 22, 2002, appellees
(hereinafter referred to collectively as "Peregrine") filed a
petition in the United States Bankruptcy Court for the District
of Delaware, seeking relief under Chapter 11 of the Bankruptcy
Code.  The following day, Peregrine filed a complaint in the
Superior Court of the State of California ("the California
Action"), asserting claims for professional malpractice, fraud

2

and breach of contract against Arthur Andersen LLP ("Andersen
LLP"), Arthur Andersen Worldwide S.C., Daniel Stulac, and
appellant (as it was formerly known) Arthur Andersen
Wirtschaftsprufungsgesellschaft Steuerberatungsgesellschaft mbH
(hereinafter "AA WPG").  Peregrine is a software company based in
San Diego, California.  According to the California complaint,
Peregrine was audited by Andersen LLP from 1997 until April 2002.
AA WPG is a German accounting company alleged to have provided
accounting services to Peregrine during the relevant time period.
Although AA WPG's relationship with Andersen LLP vis a vis
Peregrine has not been established, there is no dispute that AA
WPG has never conducted business in the United States.

　　　3.   On December 19, 2002, AA WPG filed an action in Germany
against Peregrine, pursuant to § 256 of the German Code of Civil
Procedure, seeking a determination that it was not liable to
Peregrine in tort or in contract ("the German Action").  On March
18, 2003, AA WPG brought a motion in the bankruptcy court[1]
seeking a determination that the automatic stay provision of 11
U.S.C. § 362(a) did not apply to the German Action.  A hearing on
the motion was held in May 2003, at which time the bankruptcy
court denied AA WPG's application for relief.  In its May 28,
2003 order issued at the conclusion of the hearing, the

---

[1]Throughout these proceedings, AA WPG has formally preserved
its jurisdictional defenses and has never submitted itself to the
claims process, either directly or indirectly.

3

bankruptcy court required that AA WPG obtain a suspension of the German Action "pending further order of this Bankruptcy Court." (D.I. 17 at A200, A248, A282)

4.    On June 13, 2003, AA WPG filed a motion for reconsideration, seeking approval of a voluntary stay or suspension of the German Action.  The German Action was suspended in July 2003 and, according to the record submitted at bar, remains suspended to date.  On June 16, 2003, Peregrine filed a motion for its costs, attorneys' fees and other sanctions under 11 U.S.C. § 362(h).  On November 11, 2003, after confirmation of Peregrine's plan of reorganization in the bankruptcy court, AA WPG brought a motion for relief from the stay.

5.    The bankruptcy court held a hearing on December 16, 2003 on all the pending motions.  By an opinion and order dated September 8, 2004, the bankruptcy court denied AA WPG's motion for reconsideration (finding that the automatic stay was applicable to the German Action) and denied AA WPG's motion for relief from stay.  The bankruptcy court held the German Action to be void ab initio and ordered AA WPG to "cause its German Action to be dismissed within 30 days hereof."  Finally, the bankruptcy court granted Peregrine's motion for sanctions in the amount of $110,368.21.  (D.I. 18 at A824-25)  This appeal followed.[2]

---

[2]A stay of the bankruptcy court's order was granted on October 7, 2004.  (D.I. 9)

4

6.  **Analysis.**  The bankruptcy court came to several legal conclusions on its analytical journey to the order it entered. The first significant legal conclusion reached by the bankruptcy court was that the automatic stay provided for in 11 U.S.C. § 362(a) was applicable to the German Action.  According to the reasoning of the bankruptcy court,[3] as understood by this judicial officer, because both the California and the German Actions are based on the alleged prepetition conduct of AA WPG, both Actions could have been filed prepetition.[4]

7.  Section 362 provides that any "judicial proceedings" commenced "against the debtor" that "could have been commenced before the commencement of the case under this title" are automatically stayed "until the bankruptcy case is closed, dismissed, or discharge is granted or denied, or until the bankruptcy court grants some relief from the stay."  Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991).  The Third Circuit has held that the automatic stay

---

[3]This analysis is contained on pages A 804-A809 of D.I. 18.

[4]The bankruptcy court characterizes AA WPG as filing the German Action to "thwart" the California Action by obtaining "priority of service."  Although the record indicates that, if service is accomplished in the California Action before it is accomplished in the German Action, AA WPG will lose the right to proceed with the German Action, it is not apparent to me that Peregrine will lose the right to proceed with the California Action if the reverse were true, i.e., if service were accomplished in the German Action before it is accomplished in the California Action.  In other words, it is not clear how the California Action would be "thwarted" by the German Action.

applies to all actions brought against a debtor, even if the action does not constitute a claim against the debtor and even if the actions are not brought to obtain property of the estate, so long as "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). The German Action, which is in the nature of a declaratory judgment action, is a judicial proceeding brought against Peregrine to determine whether AA WPG is responsible for any compensable injury to Peregrine. On the assumption (because it is not clear from the record) that any decision made by the German Court would affect the bankruptcy estate at bar, the German Action is "a judicial, administrative, or other action" under § 362(a).

8.  The next step of the analysis requires the court to determine whether AA WPG could have commenced the German Action before Peregrine filed its petition in bankruptcy. The bankruptcy court concluded that AA WPG could have done so, based on the fact that Peregrine could have instituted the California Action prepetition; "[t]he fact that [Peregrine] brought suit postpetition does not change the prepetition nature of the action." (D.I. 18 at A807)

6

9.   If AA WPG were seeking enforcement of a "claim" against
Peregrine in the German Action, the above analysis could be
correct, as a "claim" under 11 U.S.C. § 101(5)(A) means a "right
to payment, whether or not such right is reduced to judgment,
liquidated, unliquidated, fixed, contingent, matured, unmatured,
disputed, undisputed, legal, equitable, secured, or unsecured."[5]
But AA WPG is not asserting a claim against Peregrine; it is
asserting a defense to an action filed - postpetition - by
Peregrine against AA WPG.

10.   Therefore, the question remains as to whether AA WPG
could have legally asserted its defense in the German Action
before Peregrine's claim against AA WPG was asserted in the
California Action.  As described by the bankruptcy court, a "§
256 ZPO action can be filed **if and when a claim is asserted
without any factual or legal basis**"[6] in order to determine "the
existence or nonexistence of a legal relationship . . . in the
event that the plaintiff has a **legal interest in the immediate**

---

[5]But see Matter of M. Frenville Co., Inc., 744 F.2d 332, 335
(3d Cir. 1985), where the Third Circuit reasoned that prepetition
conduct, in and of itself, is not sufficient to cause the
automatic stay to apply; rather, one must look to see when the
claim or cause of action arises.

[6]It is unclear whether the bankruptcy court is referring to
the "§ 256 ZPO action" or "the claim" that can be filed "without
any factual or legal basis.

**judicial determination** of the legal relationship."[7]  (D.I. 18 at
A808)(emphasis added)  The bankruptcy court did not specifically
conclude that Peregrine's "claim" against AA WPG had been
sufficiently "asserted" prepetition to give AA WPG "a legal
interest in the immediate judicial determination of the legal
relationship" between Peregrine and AA WPG.  It simply concluded
that AA WPG could have commenced the German Action prepetition
because "the theory of relief is styled with respect to
prepetition events that were known to the parties."  (D.I. 18 at
808-09)  With respect to the bankruptcy court's determination of
knowledge, the court found that **"Arthur Andersen** was aware" of
the facts underlying the California Action based on "press
releases" which began some four months prior to Peregrine's
petition date and the filing of the California Action.  (D.I. 18
at A806)(emphasis added)

    11.  The record, as described in the opinion, does not
establish that Peregrine's contingent, disputed claim filed
postpetition against AA WPG provided a sufficient legal basis for
AA WPG to assert a defense thereto by commencing - prepetition -

---

[7]The above language is akin to the standards used to
determine whether a declaratory judgment action is ripe, i.e.,
whether it satisfies Article III's case or controversy
requirement.  In this regard, a court must "examine the
'adversity of the interest' between the parties to the action,
the 'conclusiveness' of the declaratory judgment and the
'practical help, or utility' of the declaratory judgment."
Travelers Insurance Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir.
1995).  This analysis was not undertaken by the bankruptcy court.

a declaratory judgment action.  Therefore, the bankruptcy court's conclusion that the German Action was subject to the automatic stay provision of § 362(a) is reversed.

12.  Even if the German Action were subject to the automatic stay, § 362(d) provides that "the court **shall grant** relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - (1) for cause . . . ."  (Emphasis added)  The Bankruptcy Code does not define "cause"; rather, the courts must determine whether "cause" exists, based on the totality of the circumstances in each particular case.  See, e.g., In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997).  Courts will generally consider three factors in this regard:  (1) the prejudice suffered by the debtor and debtor's estate if the stay is lifted to allow the continuation of a civil law suit; (2) the balancing of hardship between the parties; and (3) the probable success on the merits if the stay is lifted.  See In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).

13.  The bankruptcy court concluded that AA WPG was not entitled to annulment of the stay, retroactive or otherwise.[8]

---

[8]The bankruptcy court has two discussions of annulment under § 362(d)(1), one specifically addressed to "retroactive" annulment.  It is not clear, however, how an annulment can be anything other than "retroactive" (i.e., annulment of the automatic stay, as opposed to simply terminating the stay, would serve to validate the proceedings that would otherwise be void ab initio).

9

With respect to its analysis under § 362(d), the court concluded
that annulment of the stay would prejudice Peregrine, as it
"would have to defend itself in a foreign country and faces the
risk of inconsistent judgments." (D.I. 18 at A810)  In balancing
the hardships, the bankruptcy court found that "AA WPG could
refile the German Action if it withdrew it."[9]  The court also
found that AA WPG "may defend itself in the California Action
and/or raise counterclaims there," while it would be a hardship
for Peregrine to litigate the "same basic action in two fora"
because of the risks of "inconsistent judgments" and the
"inherent" inefficiencies and waste of resources. (D.I. 18 at
A811)  With respect to whether "retroactive" annulment was
justified under the facts, the bankruptcy court basically
ascribed bad faith to AA WPG, finding that AA WPG refused to
dismiss or suspend the German Action and "inaccurately
represented applicable German law to this court in seeking
reconsideration;" AA WPG "did not seek relief from stay before it
pursued its German Action;" "[i]ts German Action was intended and
designed to obtain a procedural advantage and to thwart the
California Action." (D.I. 18 at A814-15)  Finally, the court
found that the analysis of the Third Circuit in Stonington

---

[9]This is so only if AA WPG is not served in the California
Action before refiling in Germany.

10

Partners, Inc. v. Lernout & Hauspie Speech Products N.V., 310
F.3d 118 (3d Cir. 2002), was inapplicable to the facts at bar.

14.  Although the bankruptcy court's apparent frustration
with AA WPG and its procedural posturing is understandable,
nevertheless, the bankruptcy court's conclusions in this regard
are at odds with the general principles espoused by the Court in
Stonington; that is, for a bankruptcy court to enjoin a foreign
proceeding, the foreign proceeding must implicate "important
public polic[ies]" or "threaten United States jurisdiction in
that it "attempt[s] to carve out exclusive jurisdiction over
concurrent actions."  Id. at 127.  The Third Circuit specifically
"concluded that neither duplication of issues nor delay in filing
justifie[s] such an injunction, and further noted that even the
fact that a foreign action was 'harassing and vexatious' would
not, by itself, warrant injunctive relief."  Id.

15.  Notwithstanding the bankruptcy court's assertion to the
contrary (D.I. 18 at A817), the issue at bar has everything to do
with jurisdiction, with comity, and with restraint.  There is no
"important public policy" at stake here; nor has it been
established with any clarity that the German Action is
"threaten[ing] United States jurisdiction."  The record does not
indicate that personal jurisdiction has been established either
by the California court over AA WPG or by the German court over
Peregrine.  It is not clear what the scope of the German court's

11

jurisdiction is and how that might affect the California Action.
Indeed, the two courts actually involved in this dispute, in
California and Germany, are in a much better position to make
these difficult determinations than the bankruptcy court.  Under
these circumstances, the bankruptcy court's decision to enjoin
the German Action is inconsistent with the restraint taught by
the Third Circuit in <u>Stonington</u> and, consequently, is reversed.

16.  With respect to the bankruptcy court's award of
sanctions against AA WPG, although the bankruptcy court's
substantive conclusions have been reversed, nevertheless, I
believe sanctions are appropriately levied in this case.  The
record indicates that AA WPG sought relief from the bankruptcy
court and, when it did not get the relief it sought, declined to
specifically follow the order of the court.  The proceedings were
made more difficult and expensive because of AA WPG's conduct,
depleting Peregrine's estate needlessly.  Therefore, the award of
attorneys' fees and costs is an appropriate sanction for AA WPG's
disrespectful, if not abusive, conduct in the bankruptcy court,
pursuant to § 362(h).  More specifically, however, the fees and
costs associated with "defense of the German Action" (including
the activity of German counsel) and with the initial motion and

12

hearing are **not** appropriately awarded; the remaining fees and
costs are.


United States District Judge