IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re:

PEREGRINE SYSTEMS, INC., et al.,

    Debtors.

---

| | |
|---|---|
| AW Treuhand GmbH Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft, formerly known as Arthur Andersen Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft mbH,<br><br>    Appellant,<br><br>v.<br><br>Peregrine Systems, Inc., et al.,<br><br>    Appellees. | C.A. No. 04-1325 (SLR) |

**MEMORANDUM IN SUPPORT OF MOTION OF AW TREUHAND GMBH WIRTSCHAFTSPRÜFUNGSGESELLSCHAFT STEUERBERATUNGSGESELLSCHAFT FOR RECONSIDERATION**

Specially appearing AW Treuhand GmbH Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft ("AWT"), formerly known as Arthur Andersen Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft mbH ("AA WPG"), respectfully submits this memorandum in support of its Motion for Reconsideration of this Court's Memorandum Order of September 29, 2005, with regard only to this Court's affirmance of "sanctions" assessed against AWT under 11 U.S.C. § 362(h).[1]

---

[1] The motion is brought pursuant to Rule 8015 of the F.R. Bank. P.

## Introduction

On March 18, 2003, AWT moved before the Bankruptcy Court in the District of Delaware (the "Bankruptcy Court") for a determination that a declaratory judgment action that it had brought in Germany (the "German Action") against Peregrine Systems, Inc. ("Peregrine"), and the service of process of that action on Peregrine, did not violate the automatic stay of the United States Bankruptcy Laws ("Motion for Determination"). Subsequently, AWT moved for relief from stay, and Peregrine moved for sanctions under Section 362(h).

On September 8, 2004, the Bankruptcy Court issued an Order (the "September 8th Order") denying AWT's Motion for Determination, declaring the German Action "void *ab initio*", ordering AWT to dismiss its German Action within thirty days, and awarding Peregrine sanctions.

AWT appealed the Bankruptcy Court's ruling to this Court.[2] On September 29, 2005, this Court reversed virtually every part of the September 8th Order. However, this Court affirmed a portion of the Bankruptcy Court's assessment of "sanctions" against AWT pursuant to 11 U.S.C. § 362(h).

AWT now respectfully urges this Court to reconsider its ruling on "sanctions." First, the ruling is wrong on the law; it affirms "sanctions" against AWT under a statute, Section 362(h), that is plainly inapplicable. Second, even if the statute did apply, AWT did nothing in the course of the extended proceedings before the Bankruptcy Court that would warrant either damages or "sanctions."

---

[2] On October 4, 2004, AWT moved for a stay pending appeal of the September 8th Order. On October 7, 2004, this Court granted the motion and stayed the September 8th Order.

{B0450957;2}

## Since AWT Did Not Violate The Automatic Stay, Damages Against It Cannot Be Awarded Under Section §362(h)

Under Section 362(h) of the Bankruptcy Code, Peregrine moved for "sanctions"[3] against AWT; under the same statute, the Bankruptcy Court awarded sanctions against AWT; and, under that statute, this Court affirmed sanctions against AWT.

Section 362(h) states in full:

> "An individual injured by any *willful violation of a stay* provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages." (emph. added)

But this Court has now found, with legal reasoning that cannot be disputed, that

> "the Bankruptcy Court's conclusion that the German Action was subject to the automatic stay provision of Section 362(a) is reversed." (p. 9)

Thus, Peregrine's motion to the Bankruptcy Court for "sanctions" under Section 362(h), and that Court's award of "sanctions", simply cannot be sustained. AWT did not violate the automatic stay, the absolute prerequisite to a violation of Section 362(h). Nor, of course, are there any "damages" (in the words of the statute); because there was no "violation" to *create* damages. These conclusions emerge ineluctably from the language of the statute itself.

Judge Fitzgerald treated Section 362(h) like a contempt statute, and used it to punish AWT for failing to comply (in her view) with her order of May 28, 2003. But Section 362(h) has nothing to do with contempt; and *cannot be used to sanction an alleged violation of a court order*. § 362(h) compensates a debtor *only* for a willful violation of the automatic stay. In the words of one court:

---

[3] In its § 362(h) motion, Peregrine sought "sanctions"; and the Bankruptcy Court, as well as this Court, referred repeatedly to "sanctions." But § 362(h) refers only to "damages", not "sanctions," a significant distinction, *see* In re Prairie Trunk Ry. 112 B.R. 924, 926 n.2 (N.D. Ill. 1990), and discussion *infra*.

3

> The automatic stay is a statutory creation. *See* 11 U.S.C. § 362(a). Consequently, there is no court order which could have been violated. Without such an order, there can be no civil contempt.

In re Rimsat, Ltd., 208 B.R. 910 (N.D. Ind. 1997); *see also* In re Calstar, Inc., 159 B.R. 247, 257 (D. Minn. 1993) ("[S]ince the automatic stay is statutory rather than a court order, a creditor cannot be held in contempt for these violations.")

Had Peregrine moved for *contempt* of the May 28th Order, it would have had to do so under Rule 9020 of the Federal Rules of Bankruptcy Procedure, with service of a motion "in the manner provided for service of a summons and complaint...." Rule 9014 (b). A proceeding for civil contempt would then have required notice; the opportunity for an evidentiary hearing; clear and convincing evidence; and, ultimately, this Court's exercise of *de novo* review. Rimsat, supra at p. 912; Stotler & Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989). But none of that, of course, occurred. Judge Fitzgerald's imposition of damages against AWT under Section 362(h) simply cannot be sustained.[4]

---

[4] The other statute that authorizes sanctions under certain circumstances, Rule 11 of the Federal Rules of Civil Procedure, also explicitly requires notice to the defendant, and an opportunity to cure. It states, in relevant part:

> "If, after notice and a reasonable opportunity to cure, the Court determines that Subdivision (b) has been violated, the Court may...impose an appropriate sanction....
>
> C) (1) How Initiated:
>
>   A) By motion. A motion for sanctions under this rule shall be made separately from other motions or requests, and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the Court unless, within 21 days of service of the motion .... the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected...."

Here, there was no Rule 11 Motion (much less a "separate" such motion), and no opportunity to cure.

4

## In Any Event, AWT's Conduct Before the Bankruptcy Court Did Not Remotely Warrant Sanctions

Although this Court did not specify the precise conduct by AWT that led to its affirmance of sanctions, it did indicate that AWT "declined to specifically follow the order of the [Bankruptcy] court." This Court also found that AWT's conduct was "disrespectful, if not abusive" toward the Bankruptcy Court. With all due respect, the record simply does not support these conclusions. From the moment that AWT initiated the Bankruptcy Court proceeding and sought the Bankruptcy Court's determination that its German Action did not violate the automatic stay, AWT respected the Court's process and directives. The record supports no other conclusion.

The order of the Bankruptcy Court of May 28, 2003 directed AWT to suspend the German action by obtaining

> "an order...from an appropriate judge in an appropriate German Court that suspends the action commenced in Germany by AA WPG against Debtors until further order of this Court."

Judge Fitzgerald required AWT to obtain such an order by Monday, June 2, 2003, despite an intervening public holiday weekend in Germany. Absent such an order, Judge Fitzgerald ruled that she would hear "Debtors' request for attorneys' fees and costs and other appropriate sanctions *for AA WPG's violation of the stay*...." (emph. added)

From that moment forward, AWT took *no steps at all to advance the German Action*. Thereafter, its *only* participation in the German Action was to seek its suspension. Following the May 28th Hearing, AWT consulted its German counsel to try to get the proceedings suspended in Germany. AWT was advised that it would be impossible to obtain an order from the Frankfurt Court by June 2, 2003, suspending the German Action. Specifically, AWT was advised that it would need Peregrine's written consent to obtain a suspension of the proceedings in the German

Action, and that it would take two or three weeks after that to obtain an order from the German Court suspending the German proceedings.[5]

On May 30, 2003, just two days after the May 28th Hearing and despite the intervening public holiday of Thursday, May 29, AWT filed a motion in the German Court requesting a suspension of the German Action. This suspension required a one line consent of Peregrine. Because AWT believed that it had satisfied the spirit and thrust of the May 28th Order (by taking immediate steps to suspend the German Action), but not the letter, AWT made a Motion for Reconsideration on June 13, 2003 asking the Court to reconsider that language of its Order that had directed AWT to obtain an order of the Frankfurt Court by June 2, 2003 ("AWT Motion for Reconsideration"). AWT proposed an Order directing AWT to file whatever papers were necessary in the German Action in order to place the proceedings in Germany in suspense; and otherwise preserving the language of the May 28th Order.[6]

The German Action was formally suspended in mid-July, 2003, when Peregrine finally gave its one-line "consent" to the suspension.

The record reflects a controversy as to whether AWT could, or could not, have suspended the German Action on its own initiative; and, thus, whether the German Action could have been *formally* suspended earlier than it was. That controversy is, frankly, irrelevant. There has never been any suggestion that AWT took advantage *in any way* of the slight time lapse that occurred from May 28, 2003 through the *formal* suspension of the German Action. Indeed, even though AWT believed and argued that there was no legal basis for the Bankruptcy Court to order the suspension, and even though the actual suspension lasted well over two years (from the hearing

---

[5] Declaration of Ulrich Theune, dated June 2, 2003 ("First Theune Aff.", attached to Certification of Counsel), paras. 5, 6. (A-198).
[6] The Motion for Reconsideration was never ruled upon until Judge Fitzgerald's omnibus ruling of September 8th, 2004.

6

{B0450957;2}

of May 28th, 2003 through this Court's Opinion of September 29, 2005), it is undisputed that AWT adhered rigorously and faithfully throughout that entire time to the Bankruptcy Court's order that the German Action be suspended.

On June 16, 2003, shortly after AWT filed its Motion for Reconsideration, Peregrine moved for sanctions under 11 U.S.C. §362(h). Its principal contention was that AWT could have dismissed its German action "without prejudice"; and, thus, that AWT had misled the Court on that issue at the May 28th Hearing. Peregrine's statement was inaccurate with regard to the only relevant issue, the German Action. Indeed, Peregrine's own German counsel eventually conceded precisely that,[7] and Judge Fitzgerald so found as well.[8]

An order imposing damages required not just a violation of the automatic stay (which had not occurred), but a *willful* violation. If AWT had "persuasive legal authority" supporting its position, then its conduct could not "fall within the parameters of 'willfulness.'" In re Univ. Med. Ctr., 973 F.2d 1065, 1088 (3d Cir. 1992). Here, AWT not only had "persuasive legal authority"; its position on the automatic stay has, indeed, now been accepted by this Court.

### Peregrine Has Unclean Hands

What has been said is more than enough; but there is one final basis for reconsideration.

Peregrine made gross misstatements of fact in two submissions to the Bankruptcy Court.[9] Peregrine leveled serious charges against AWT, alleging that AWT was "playing games…with [this] Court" (Peregrine Relief Objection, p. 7) (A-530); had made "affirmative

---

[7] "It is true that ZPO, § 261, provides that a complaint is considered 'inadmissible' under German law if another action is pending between the same parties referring to the same matter in controversy." Second Scholz Declaration, dated June 16, 2003, at para. 11. (A-377, 378).

[8] "[I]f AA WPG was served with the California Action prior to refiling its German Action, it could no longer refile that action." September 8th Opinion, n. 8. (A-794).

[9] Objection of Peregrine Systems, Inc. to Motion of Arthur Andersen Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft mbH for Reconsideration ("Peregrine Recon. Objection"), (A-336 et seq.), and Objection of Peregrine Systems, Inc. to Motion of Arthur Andersen Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft mbH for Relief from Stay ("Peregrine Relief Objection"), (A-524 et seq.).

7

{B0450957; 2}

misrepresentations" to "Peregrine, this Court, and/or the process servers in Germany" (id., p. 7 n.6) (A-530); had acted in "bad faith" (id., p. 8) (A-531); and had "abused the authority of this Court." (Peregrine Recon. Objection, p. 3). (A-338).

Peregrine never even approached substantiation of these serious charges.

The most blatant misrepresentation was Peregrine's absurd contention that its failure to serve AA WPG with the California Complaint was AA WPG's fault because AA WPG had changed its corporate name.

Peregrine contended that its

> "inability to accomplish service on AA WPG is the consequence of AA WPG's *affirmative misrepresentations* to Peregrine, *this Court*, and/or the process servers in Germany concerning its corporate status and its proper name." Peregrine Relief Objection, p. 7, n.6. (A-530).

They also suggested that AA WPG

> "*has now resisted service* of the California action on it in Germany on the ground that it no longer exists or has changed its name." Peregrine Recon. Objection, p. 3. (A-338).

These were simply fabrications. Peregrine has never even *attempted* to substantiate them, though they were challenged to do so in numerous filings by AWT. Here are the real facts. Although AA WPG had no "responsibility" to Peregrine to put Peregrine on special notice of its name change, AA WPG *disclosed the name change to Peregrine on March 18, 2003* in its Motion for Determination. A clear message went to Peregrine: the proper name of the company for service of process was "Ernst & Young Revisions-und Treuhandgesellschaft mbH, Wirtschaftsprüfungsgesellschaft, Steuerberatungsgesellschaft."

8

Peregrine then bungled service by ignoring AWT's notice of its name change, and using the old name;[10] and, thus, Peregrine's attempted service of process was rejected on September 9, 2003 by the German authorities under the Hague Service Convention.[11]

Peregrine never even attempted to justify its scurrilous talk of AWT's "affirmative misrepresentations;" or its calumny that AWT "resisted service of the California action." It has unclean hands, and for that reason alone should be denied "sanctions."

## Conclusion

When AWT initiated its German Action, it believed, based on sound legal authority, that it had not violated the automatic stay. It nevertheless promptly brought the German Action to the attention of the Bankruptcy Court; and respected and obeyed the Bankruptcy Court's orders during a protracted and arduous proceeding. AWT has now been tarred with a "sanctions" order that, we respectfully submit, cannot be sustained as a matter of the applicable law, or the factual record.

The order under Section 362(h) should be reversed.

[remainder of page intentionally blank]

---

[10] On May 22, 2003, Peregrine applied to the San Diego Court for an order appointing Crowe Foreign Services as its international process server to effect service of process "on defendant Arthur Andersen Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft mbH". And on May 29, 2003, Peregrine filed an "Amendment to Complaint" in San Diego, substituting Arthur Andersen Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft mbH for "Arthur Andersen Germany".

[11] Dr. Stefan Kraus, the Managing Partner of the law firm Luther Menold, German counsel to AA WPG, has stated flatly in an affidavit that the rejection by the German authority occurred without *any* participation on the part of AA WPG. *See* Kraus Affidavit dated December 5, 2003, para. 9 and 10. (A-555).

Respectfully submitted,

FERRY, JOSEPH & PEARCE, P.A.

_/s/ Theodore J. Tacconelli_
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555

-and-

Paul E. Summit, Esq.
SULLIVAN & WORCESTER, LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800

-and-

Utz P. Toepke, Esq.
LAW OFFICES OF UTZ P. TOEPKE
70 W. Red Oak Lane
White Plains, NY 10604
(914) 697-4791

-and-

John Morrell, Esq.
HIGGS, FLETCHER & MACK, LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101
(619) 236-1551

Counsel for AW Treuhand GmbH
Wirtschaftsprüfungsgesellschaft
Steuerberatungsgesellschaft,
formerly known as Arthur Andersen
Wirtschaftsprüfungsgesellschaft
Steuerberatungsgesellschaft mbH

Dated: October 11, 2005

{B0450957; 2}

## CERTIFICATE OF SERVICE

I, Theodore J. Tacconelli, certify that I am not less than 18 years of age, and that service of this *Memorandum in Support of Motion of AW Treuhand GmbH Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft for Reconsideration* was made on October 11, 2005, upon the following parties in the manner indicated:

### BY HAND DELIVERY

Kimberly E.C. Lawson, Esq.
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

### BY FIRST CLASS MAIL

R. Paul Yetter, Esq.
Autry W. Ross, Esq.
Yetter & Warden LLP
Two Houston Center
909 Fannin, Suite 3600
Houston, TX 77010

Evan C. Borges, Esq.
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Under penalty of perjury, I declare that the foregoing is true and correct.

Theodore J. Tacconelli (No. 2678)